Monica S. Call (11361)
mcall@foley.com
FOLEY & LARDNER LLP
95 South State Street, Suite 2500
Salt Lake City, UT 84111
(801) 401-8917

Martha Brewer Motley (*pro hac vice application forthcoming*)
mbmotley@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
(614) 464-5626

*Attorneys for Allergy Research Group LLC*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| ALLERGY RESEARCH GROUP LLC a Delaware limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>ARLI MUMUZIEV,<br><br>an individual<br><br>    And,<br><br>John Does, 1-10.<br><br>    Defendants. | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTIVE RELIEF**<br><br>Case No. 2:23-cv-00059-DAK-JCB<br><br>Judge Dale A. Kimball<br>Magistrate Judge Jared C. Bennett |

Pursuant to Fed. R. Civ. P. 55(b) and DUCiv 55-1(b)(2), Plaintiff Allergy Research Group, LLC moves this Court to enter default judgment enjoining Defendant Arli Mumuziev ("Mumuziev") from engaging in the unlawful and unauthorized sale of its products on the Internet, including but not limited to, the sale of materially different and non-genuine products bearing

ARG's trademarks. **Plaintiff does not seek monetary damages in this motion, but it does seek return or destruction of the infringing products**. The clerk has issued a default in this matter. (*See* Entry of Default ECF No. 14, attached hereto as Exhibit A.) Further discussion is set forth in the accompanying memorandum in support.

## PROCEDURAL AND FACTUAL BACKGROUND

Allergy Research Group, LLC ("ARG"), an American company based in Salt Lake City, Utah, has been a leading developer of nutritional and dietary supplements for over forty years, selling its products under the Allergy Research Group, NutriCology, and Optimox brands. (Compl., ECF No. 1, ¶¶ 1, 11, 18). To protect these brands, ARG has registered numerous trademarks with the United States Patent and Trademark Office (*Id.* ¶ 25.) ARG's trademarks are valid, subsisting, and in full force and effect. (*Id.* ¶ 26.) Consumers recognize ARG as the source of products sold under its marks. (*Id.* ¶ 28.) ARG's products are sold exclusively through authorized resellers ("Authorized Resellers"). *(Id.* ¶¶ 20–24.)

ARG's exclusive distribution network is an important product quality control, because ARG contractually requires its Authorized Resellers to abide by numerous quality control and customer service requirements, including requirements relating to product inspections, product handling, and reporting of complaints. (*Id.* ¶¶ 20-21, 58-78.) These quality controls minimize the risk that consumers receive poor-quality products or service, which is particularly important for ARG because its products are ingested by consumers, and poor-quality or degraded products can create health and safety risks. (Compl. ¶¶ 59, 71, 74-76.) Consumers on Amazon have complained of receiving ARG products that are fake, miscolored, defective, harmful, and damaged. (*Id.* at ¶¶ 52-57.) Thus, it is crucial that ARG be able to ensure all its products are subject to its strict quality

controls. (*Id.* at ¶ 59.) However, ARG has no way of ensuring that unauthorized sellers, like Mumuziev, are following its quality controls. (*Id.* ¶ 75, 102.) For this reason, ARG provides a satisfaction guarantee ("Guarantee") for products purchased from Authorized Resellers so that customers can feel comfortable that they are receiving high-quality, authentic ARG products. (*Id.*) The Guarantee does not come with products sold by unauthorized sellers, such as Mumuziev, because they are not subject to ARG's quality controls. (*Id.*) When products bearing ARG trademarks are sold on Amazon by unauthorized sellers, consumers have received poor-quality products, been disappointed, and left negative reviews of those products, hurting the value of the ARG trademarks. (*E.g.*, *id.* ¶¶ 52-57.)

To enforce its quality controls, ARG regularly monitors the sale of its products online. (Compl. ¶¶ 105-106.) ARG discovered through its monitoring that an unauthorized seller was selling products bearing its trademarks on Amazon under the storefront name "TOKSTORE2" at Amazon Merchant ID A2GDSDXI9RQKIX. (*Id.* ¶¶ 3, 106.) Upon further investigation, ARG discovered that Defendant Mumuziev was the operator of the storefront. (*Id.* ¶¶ 106-108.) Prior to this lawsuit, ARG sent several cease-and-desist letters to Mumuziev, however, Mumuziev ignored these letters and continued his infringing sales. (*Id*. ¶¶ 115-124.)

ARG's Complaint alleges that Mumuziev infringes ARG's trademarks by selling materially different products using those trademarks on Amazon.com. (Compl. at 1-2). The products sold by Mumuziev are materially different from genuine ARG products sold by Authorized Resellers because they are not subject to quality controls or the Guarantee and are more likely to have quality problems. Furthermore, Mumuziev's sale of these products is confusing to consumers, as consumers are likely to think that Mumuziev's products are genuine ARG products

3

subject to ARG quality controls, ARG's Guarantee, and sold by an Authorized Reseller, when they are not. (*Id.* ¶¶ 132-136, 140-143.)

ARG's Amended Complaint alleges six counts: (1) trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a)(1)(a); (2) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (3) common law trademark infringement; (4) deceptive trade practices in violation of Utah Code Ann. § 13-11a-3; (5) unfair competition in violation of Utah Code Ann. § 13-5a-102; and (6) tortious interference with contractual relations. (Compl. at 37-49.) After receiving leave from this Court to serve Mumuziev by alternative means (ECF Nos. 8-9), ARG served Mumuziev on February 27, 2023, by emailing to Mumuziev and sending through the Amazon messaging system to Mumuziev's storefront the complaint, summons, and court order granting alternative service (ECF No. 10). Mumuziev did not answer ARG's complaint in the time allowed by Fed. R. Civ. P. 12(a)(1)(A)(i), and the Clerk entered default against Mumuziev under Fed. R. Civ. P. 55(a) on March 24, 2023. (ECF No. 14.)

ARG now moves the Court for a default judgment and permanent injunction against Mumuziev. <u>ARG does not seek monetary damages in this motion, but it does seek return or destruction of the infringing products.</u>

## ARGUMENT

### A.   Standard Governing Default Judgment.

Under Federal Rule of Civil Procedure 55(b)(2), a court may enter default judgment after the clerk has entered default. *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-02445, 2008 U.S. Dist. LEXIS 122917, at *3 (D. Colo. Mar. 24, 2008). A court must first ensure it has jurisdiction and that the default was properly entered. *Fankhanel v. Filiaga*, No. 2:09-cv-400 CW, 2009 U.S.

4

Dist. LEXIS 97520, at *3 (D. Utah Oct. 13, 2009). The court must then determine whether the allegations and unchallenged facts – which are deemed true – create a legitimate basis for the entry of a judgment. *Id.* ("[i]n determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." (citing *Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, No. 08-cv-01114-RPM-MEH, 2009 U.S. Dist. LEXIS 114732 (D. Colo. Mar. 20, 2009))).

### B. Jurisdiction and Entry of Default are Proper.

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because ARG pled federal claims under 15 U.S.C. §§ 114, 1125, and its state law claims arise out of the same case or controversy.

This Court also has personal jurisdiction over Mumuziev under the Due Process Clause because Mumuziev expressly aimed tortious activities toward the State of Utah and established sufficient minimum contacts with Utah by, among other things, advertising and selling infringing ARG products to consumers within Utah through one or more highly interactive commercial websites. The Court must determine whether the exercise of jurisdiction comports with due process. Jurisdiction exists when: (1) a non-resident defendant has "purposefully directed its activities at residents of the forum" state; (2) plaintiff's injury arose from those purposefully directed activities; and (3) exercising jurisdiction would not offend "traditional notions of fair play and substantial justice." *Exact Mktg. v. Unique Sports Prods.*, No. 2:18-cv-00193, 2018 U.S. Dist. LEXIS 123316, at *5–6 (D. Utah July 20, 2018); *Diesel Power Source, L.L.C. v. Crazy Carl's Turbos Inc.*, No. 2:14-cv-00826-DN, 2015 U.S. Dist. LEXIS 30060, at *22 (D. Utah March 10, 2015). Once plaintiff makes this showing, the burden shifts to defendant to present why it would be unreasonable to exercise jurisdiction. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351–

52 (Fed. Cir. 2003).

In infringement cases, courts have repeatedly held that sales of infringing products into the forum state over the internet establish personal jurisdiction over a defendant. *Exact Mktg*, 2018 U.S. Dist. LEXIS 123316, at *5–6 (finding jurisdiction over defendant that sold infringing products into Utah); *Orbit Irrigation Prods. v. Melnor, Inc.*, No. 1:16-cv-137, 2017 U.S. Dist. LEXIS 51561, at *12-13 (D. Utah Apr. 3, 2017) (sales of infringing products into forum state through Amazon conferred jurisdiction); *Cornice Techs., Inc. v. Affinity Dental Prods.*, 2005 U.S. Dist. LEXIS 45546, at *15 (D. Colo. July 21, 2005) (operation of website through which customers in forum state could purchase infringing products established jurisdiction).

Here, Mumuziev expressly aimed his tortious activities toward Utah and purposefully availed himself of the privilege of doing business in Utah through significant and regular sales of infringing products bearing the ARG trademark to Utah and by deliberately utilizing Amazon's "Fulfillment by Amazon" service, which ships and stores products nationwide, including in warehouses in Utah. (Compl. ¶¶ 110-114.) Mumuziev further engaged in these tortious activities with the knowledge that ARG is located in Utah and will be harmed in Utah. (*Id.* ¶¶ 110, 116) Thus, exercising jurisdiction over Mumuziev comports with due process.

Default was also properly entered. Mumuziev was properly served with the Complaint on February 27, 2023, in the manner authorized by the Court. (ECF Nos. 9-10.) ARG filed a Request for Entry of Default and the Clerk properly entered default on March 24, 2023. (ECF Nos. 11, 14.)

    **C.**    **ARG Has Stated a Prima Facie Case for Each of Its Claims.**

Default judgment is appropriate if there is a "sufficient basis in the pleadings" for the judgment and "the unchallenged facts constitute a legitimate cause of action." *Bodyguard Prods. v.*

*Doe*, No. 2:18-cv-00026-TC, 2018 U.S. Dist. LEXIS 192234, at *4 (D. Utah Nov. 8, 2018). The well-pled facts of the complaint and undisputed facts set forth by the moving party in affidavits and exhibits are accepted as true. *Id.*; *United States v. Craighead*, 176 F. App'x. 922, 925 (10th Cir. 2006) (well-pled factual allegations are established as true).

> 1. **ARG Stated Claims for Trademark Infringement under Federal Law and Common Law and Unfair Competition under Federal Law and Utah Statutory Law.**

A claim for trademark infringement or unfair competition under federal and common law includes the following elements: (1) plaintiff has a protectable interest in the trademark; (2) defendant used an identical or similar mark in commerce; and (3) defendant has likely confused customers by using the mark. *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014); *JIVE Commerce, Ltd. Liab. Co. v. Wine Racks Am., Inc.*, No. 1:18-CV-49 TS-BCW, 2018 U.S. Dist. LEXIS 138967, at *28 (D. Utah Aug. 15, 2018) (recognizing the applicability to both Lanham Act claims and common law trademark infringement). Unfair competition under Utah's § 13-5a-102 contains just one additional element, that the trademark infringement lead "to a material diminution in value of intellectual property." *Siskin Enters. v. DFTAR, LLC*, No. 2:20-cv-00304-JNP, 2021 U.S. Dist. LEXIS 36536, at *8 (D. Utah Feb. 25, 2021).

ARG properly pleaded each of these elements. ARG has a protectable interest, as the ARG trademarks are registered, valid, subsisting, and in full force and effect, and ARG uses its marks to advertise and sell ARG products. (Compl. ¶¶ 25-29.) Mumuziev has used the ARG trademarks in commerce by advertising, selling, and distributing products bearing the marks. (*Id.* ¶¶ 164, 176, 182, 196, 218.) Mumuziev has caused consumer confusion because he is selling materially different, non-genuine products bearing the ARG trademarks that do not come with ARG's

Guarantee, do not comply with ARG's quality controls, and interfere with ARG's ability to control the quality of its products.[1] (*See id.* ¶¶ 75, 132-143, 166-169, 176, 204, 223, 227.) Consumers who purchase products from Mumuziev think they are getting genuine ARG products that come with the Guarantee and comply with ARG's quality controls when they are not. (*Id.* ¶¶ 59, 78, 97, 103-104, 132-143.) Thus, Mumuziev is creating consumer confusion and infringing on the ARG trademarks. *See, e.g., Skullcandy, Inc. v. Filter USA, Inc.*, No. 2:18-CV-00748-DAK, 2019 U.S. Dist. LEXIS 104393, *24-25 (D. Utah June 21, 2019) (Kimball, J.) (finding plaintiff stated claim for trademark infringement by alleging, in part, multiple ways in which defendants failed to abide by plaintiff's quality controls or interfered with plaintiff's ability to implement its quality controls); *Otter Prods. v. Cloudseller, LLC*, No. 19-cv-00630-JLK, 2019 U.S. Dist. LEXIS 224515, *21-23 (D. Colo. Dec. 3, 2019) (same); *Otter Products, LLC v. Wang*, No. 1:18-cv-03198-CMA-SKC,

---

[1] Courts have repeatedly held that products sold without the applicable manufacturer guarantees or warranties are materially different. *See, e.g., Brilliance Audio, Inc. v. Haights Cross Communs., Inc.*, 474 F.3d 365, 370 (6th Cir. 2007); *Davidoff & Cie., S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1300-02 (5th Cir. 1997); *ABG Prime Grp., Inc. v. Innovative Salon Prods.*, No. 17-12280, 2018 U.S. Dist. LEXIS 98196, at *12-13 (E.D. Mich. June 12, 2018); *Herbalife Int'l of Am., Inc. v. Healthy1 Inc.*, No. 2:18-cv-6378-JFW-JC, 2019 U.S. Dist. LEXIS 113805, *11 n.7 (C.D. Cal. July 8, 2019); *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 229-30 (S.D.N.Y. 2011).

Likewise, products sold outside a manufacturer's quality controls are not genuine products and establish trademark infringement. *See, e.g., Hand & Nail Harmony, Inc. v. Int'l Nail Co.*, 2015 U.S. Dist. LEXIS 67421, at *28-29 (C.D. Cal. May 22, 2015); *Desmond v. Chi. Boxed Beef Distribs.*, 921 F. Supp. 2d 872, 881-83 (N.D. Ill. 2013); *Bel Canto*, 837 F. Supp. 3d at 229-230 (plaintiff has claim for infringement when defendant's resale of plaintiff's product "deprives [plaintiff] of an opportunity to exercise quality control."); *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (finding that interference with trademark owner's quality controls gives rise to claim for trademark infringement); *Societe Des Produits Nestle, S.A. v. Case Helvetica, Inc.*, 982 F.2d 633, 642 (1st Cir. 1992); *Shell Oil Co. v. Comm. Petro. Inc.*, 928 F.2d 104, 107(4th Cir. 1991).

2019 U.S. Dist. LEXIS 52916, *6-7 (D. Colo. March 28, 2019) (enjoining defendant from selling plaintiff's products and finding defendant's unauthorized sale of plaintiff's products "cause[d] consumer confusion because consumers who purchase products from [defendant] think they are getting genuine Otter Products that come with the Warranty and comply with Plaintiffs' quality controls when they are not").

Mumuziev meets the criteria for unfair competition under Utah Code Ann. § 13-5a-102 because, as stated above, it has committed trademark infringement and this trademark infringement has materially damaged the value of ARG's trademarks by harming ARG's reputation and forcing ARG to go through the effort of policing its sales online to combat the problems causes by unauthorized sellers such as Mumuziev. (Compl. ¶¶ 144, 170, 188, 209, 213-236, 244.)

## 2.  ARG Stated a Claim for Deceptive Trade Practices.

Utah has defined deceptive trade practices as occurring when someone "(a) passes off goods or services as those of another; (b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods and services; [or] (c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another." Utah Code Ann. § 13-11a-3.

ARG has stated a claim for unfair or deceptive trade practices. Mumuziev engaged in unfair and deceptive trade practices because he is selling materially different, non-genuine products under the ARG trademarks. (Compl. at ¶¶ 132-136, 142-143, 198-207.) Mumuziev's actions occurred in the course of his business, as they are part of the product listings it advertises to consumers. (*Id*. ¶¶ 196-197, 107-108.) Mumuziev's deceptive trade practices impact consumers and create consumer confusion because consumers are likely to rely on his false representations and use of

9

ARG trademarks and consequently believe that they are purchasing genuine ARG products that come with the Guarantee and have been through ARG's quality controls, when they are not and have not. (*Id.* ¶¶ 75, 107.) ARG has been harmed as a result of Mumuziev's deceptive trade practices. (*See id.* ¶¶ 52-57, 206-212.)

### 3. ARG Stated a Claim for Tortious Interference.

A tortious interference claim requires plaintiff to show: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *TLS Grp., S.A. v. NuCloud Glob., Inc.*, No. 2:15-cv-00533-TC, 2016 U.S. Dist. LEXIS 51751, at *22 (D. Utah Apr. 18, 2016) (citation omitted).

ARG has stated a claim for tortious interference. ARG has specific agreements with its Authorized Resellers that prohibit them from selling ARG Products to third parties who intend to resell the products. (Compl. ¶¶ 19-20, 145, 238.) Mumuziev knew of this prohibition. (*Id.* ¶¶ 115-124, 146, 242-243.) Mumuziev intended to induce a breach of these agreements because he knew that his purchase of ARG Products from Authorized Resellers for the purpose of resale would result in a breach. (*Id.* ¶¶ 149-150, 241-245.) Mumuziev's purchase and resale of ARG Products from Authorized Resellers did, in fact, produce a breach. (*Id.*) Mumuziev used improper means to interfere with the agreements because he acted with the intent to directly induce the breach of the agreements, with the motive to profit off of selling poor quality ARG Products and misleading purchasers about the source of the products, and with no regard to the interests of ARG in protecting its brand and agreements with Authorized Resellers. (*Id.* ¶¶ 144, 151, 245.) As a result of Mumuziev's actions, ARG has suffered damages. (*Id.* ¶¶ 247-249.) Finding Mumuziev tortiously interfered with ARG's agreements is proper. *Australian Gold, Inc. v. Hatfield*, 436 F.3d

1228, 1231 and 1243 (10th Cir. 2006) (affirming grant of injunctive relief against defendant for tortiously interfering with plaintiff's contracts with authorized resellers where defendant sold plaintiff's products over the internet or using plaintiff's trademarks in connection with the sales); see also *Filter USA*, 2019 U.S. Dist. LEXIS 104393, at *13 (denying unauthorized seller's motion to dismiss).

### D. ARG Is Entitled to a Permanent Injunction Prohibiting Mumuziev from Using the ARG Trademarks or Selling Products Bearing the ARG Trademarks.

The Lanham Act contemplates that injunctive relief may be awarded upon a finding of trademark infringement. 15 U.S.C. § 1116(a). To determine whether injunctive relief is appropriate, courts weigh whether: (1) plaintiff has suffered or will suffer an irreparable injury; (2) plaintiff lacks an adequate remedy at law; (3) the balance of the hardships as between the parties favors injunctive relief; and (4) the public interest is not averse to an injunction. *Vitamins Online, Inc. v. Heartwise, Inc.*, No. 2:13-CV-982-DAK, 2016 U.S. Dist. LEXIS 16355, at *26 (D. Utah Feb. 9, 2016) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837 (2006)).

Here the balancing of these factors weighs strongly in favor of granting ARG a permanent injunction. ARG will suffer irreparable injury if Mumuziev continues to sell products bearing the ARG trademarks. (Compl. ¶¶ 155-156, 171, 173, 179, 189, 210, 234, 248); *Mrs. Fields Franchising, Ltd. Liab. Co. v. MFGPC, Inc.*, No. 2:15-cv-0094-JNP-DBP, 2019 U.S. Dist. LEXIS 47192, at *21–22 (D. Utah Mar. 19, 2019) (finding irreparable harm exists if use of mark will result in harm to reputation, trade, or goodwill). Second, ARG lacks an adequate remedy at law because Mumuziev's continued infringement will cause damage to ARG's intellectual property, goodwill, and brand integrity. (Compl. ¶¶ 52, 58-59, 105, 155-156, 171, 189, 210, 234, 248.) Third, the balance of hardships between the parties favors injunctive relief. ARG has expended

substantial time and money developing and protecting the ARG trademark and without an injunction it will be unable to protect its trademarks and stop Mumuziev's infringing conduct. (*Id.* ¶¶ 21, 58-59, 76, 105.) Any harm to Mumuziev in requiring it to comply with trademark law merits no equitable consideration.

Last, a permanent injunction is appropriate to enjoin Mumuziev from using the ARG trademarks or selling products bearing the ARG trademarks. The harm to consumers and ARG is particularly profound because ARG products are ingested by consumers and consumers on Amazon have complained of receiving ARG products that are fake, miscolored, defective, harmful, and damaged. (*See* Compl. at ¶¶ 52-57.) Thus, it is crucial that ARG be able to ensure all its products are subject to its strict quality controls. It is in the public's best interest that ARG be able to control the quality of its products without interference by unauthorized sellers like Mumuziev. *See, e.g.*, *Allergy Research Group v. Andic*, No. 2:22-cv-00249-HCN, ECF No. 23 (D. Utah April 8, 2022) (entering default judgment and permanent injunction prohibiting all sales of plaintiff's products where plaintiff stated claims of trademark infringement, unfair competition, and related claims against defendant who was selling products bearing plaintiff's trademarks that were materially different from plaintiff's genuine products and did not abide by and interfered with plaintiff's quality controls); *Owlet Baby Care v. McCray*, No. 2:19-cv-00311-TC, ECF No. 12 (D. Utah May 7, 2019) (same); *Skullcandy v. Park*, No. 2:18-cv-00749-DN, ECF No. 21 (D. Utah Sept. 19, 2018) (same); *Wang*, No. 1:18-cv-03198-CMA-SKC, 2019 U.S. Dist. LEXIS 52916 (same); *PopSockets LLC v. Y.E.F. Trading Inc.*, No. 1:19-cv-03636-CMA-SKC, 2020 U.S. Dist. LEXIS 205901 (D. Colo. Nov. 4, 2020) (same).

## CONCLUSION

For the foregoing reasons, this Court should enter default judgment against Mumuziev and award ARG permanent injunctive relief. Specifically, ARG seeks a permanent injunction against Mumuziev and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled Mumuziev, and all of those in active concert and participation with Mumuziev (the "Enjoined Parties") as follows:

1. Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the ARG Registered Trademarks;

2. Prohibiting the Enjoined Parties from using any of the ARG Registered Trademarks in any manner, including advertising on the Internet;

3. Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all products bearing any of the ARG Registered Trademarks;

4. Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the ARG Registered Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

5. Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of ARG's products, or any of the ARG Registered Trademarks;

6. Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo, and Bing), to remove from the Internet any of the ARG Registered Trademarks which associate ARG's products or the ARG Registered Trademarks with the Enjoined Parties or the Enjoined Parties' websites;

7. Requiring the Enjoined Parties to take all action to remove the ARG Registered Trademarks from the Internet, including from the website www.amazon.com; and

8. Requiring the Enjoined Parties to destroy or return to ARG all products bearing the ARG Registered Trademarks in their possession, custody, or control.

Dated: March 28, 2023

                FOLEY & LARDNER

                By: */s/ Monica S. Call*
                    Monica S. Call

                    *Attorney for Allergy Research Group, LLC*

4866-5684-5658.1

## CERTIFICATE OF SERVICE

I certify that a copy of **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTIVE RELIEF** has been served on Defendant Mumuziev by the means authorized by this Court (ECF No. 9), arliarli9696@gmail.com and tabaldiev.ataii96@gmail.com and through the Amazon messenger system, on this date of March 28, 2023.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Monica S. Call*

　　　　　　　　　　　　　　　　　　　　　　Monica S. Call